# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| LAWRENCE HIGGINS, PENELOPE HIGGINS, ASHLEY GOOLDRUP, TROY RENY, JOSHUA and MORGAN HARRIS, Individually and on behalf of minor children, R.J.H., C.E.H., and A.A. H., BRUCE HARRINGTON, CATHERINE HARRINGTON, JOSEPH DEBLOIS, CHRISTINE DEBLOIS, MIKE OTIS, SUE OTIS, TERRY POULIN, JUDITH POULIN, <br><br> Plaintiffs, <br><br> vs. <br><br> HUHTAMAKI OYJ, HUHTAMAKI, INC., INTERNATIONAL PAPER COMPANY, SAPPI NORTH AMERICA, INC. F/K/A S.D. WARREN COMPANY, S.D. WARREN COMPANY, SAPPI LTD., SCOTT PAPER COMPANY, KIMBERLY-CLARK CORPORATION, UPM — KYMMENE, INC., NORTHWERN SC PAPER CORPORATION, PERRY VIDEX, LLC, INFINTY ASSET SOLUTIONS, NEW MILL CAPITAL LLC, GO LAB, INC., VERSO CORPORATION, PIXELLE SPECIALITY SOLUTIONS, and PINE TREE WASTE, INC. D/B/A CENTRAL MAINE DISPOSAL, <br><br> Defendants. | Case No. _____ |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Huhtamaki, Inc. ("Huhtamaki"), hereby submits this Notice of Removal, removing to the United States District Court for the District of Maine the case brought by Plaintiffs Lawrence Higgins, Penelope Higgins, Ashley Gooldrup, Troy Reny, Joshua and Morgan Harris, individually and on behalf of R.J.H., C.E.H., and A.A.H., Bruce Harrington, Catherine Harrington, Joseph Deblois, Christine Deblois, Mike Otis, Sue Otis, Terry Poulin, and Judith Poulin ("Plaintiffs").

In support of its Notice of Removal and as grounds for removal, Huhtamaki states as follows:

## I.   Factual and Procedural Background

1. On or about September 7, 2021, Plaintiffs commenced an action in the Superior Court, County of Somerset, State of Maine, captioned *Lawrence Higgins, et al. v. Huhtamaki Oyj, et al.*, Docket No. SC-CV-21-39 (the "State Court Action").

2. The Complaint alleges seven causes of action based on Defendants' alleged use, emission, discharge, disposal, distribution, and spraying of per- and polyfluoraolkyl substances ("PFAS"). Ex. A, ¶¶ 99, 107, 114, 123, 133, 138, 144.

3. Plaintiffs allege that Defendants are "paper mills and waste treatment processors who are responsible for manufacturing products and waste sludge fertilizers contaminated with toxic levels of per- and polyfluoroalkyl substance and their constituents ("PFAS")." *Id.*, ¶ 1. "Plaintiffs are landowners [who allege that their] land and water supply have been contaminated as a result of Defendants' discharge, distribution, disposal, and/or spreading of PFAS." *Id.*, ¶ 2. Plaintiffs claim they have "sustained injury to their bodies and real property as well as severe emotional distress, and are more likely to suffer adverse health effects in the future." *Id.*, ¶ 2.

4. The Complaint seeks nominal and compensatory damages for Plaintiffs for real property damage, out of pocket expense, personal property damage, loss of use and enjoyment of property and the fruits thereof, diminution in property value, personal injury, physical and emotional injuries, the necessity for long-tern medical monitoring, annoyance, upset, aggravation, and inconvenience, allegedly cause by Defendants' conduct. *Id.*, ¶¶ 99, 107, 114, 123, 133, 138.

5. Plaintiffs also seek an award to fund a medical monitoring program for periodic medical testing and examinations for the detection of cancer and other illnesses. *Id.*, ¶¶ 139-144.

6.	Huhtamaki, Inc. was served with a copy of the Summons and Complaint on November 19, 2021. As such, pursuant to Fed. R. Civ. P. 6(a) and 28 U.S.C §§ 1446(b), this Notice of Removal is timely, as it is filed by Huhtamaki within thirty (30) days of the date on which Huhtamaki was served with a copy of the pleading setting forth the claim for relief upon which the action is based.

7.	Huhtamaki has not filed a responsive pleading to the Complaint. Pursuant to 28 U.S.C. § 1446(a), attached to this Notice of Removal as exhibits are true and correct copies of the Complaint, Summons, and Service of Process Transmittal, which constitute all process, pleadings and orders served on Huhtamaki in this action. *See* Exs. A, B, C.

8.	All properly joined and served Defendants join this Notice of Removal. 28 U.S.C. § 1446(b)(2)(a). Pine Tree Waste, Inc., D/B/A Central Maine Disposal, and GO Lab, Inc., also consent to this Removal, even though their consents are unnecessary because they have been improperly joined. *See, e.g.*, *Int'l Union of Operating Eng'rs, Local No. 68 Welfare Fund v. AstraZeneca PLC (In re Pharm. Indus. Average Wholesale Price Litig.)*, 431 F. Supp. 2d 109, 117 (D. Mass. 2006) (noting that a "federal court may ignore the lack of consent from [a fraudulently joined] defendant and permit the removal of the case").

9.	Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served contemporaneously on Plaintiffs' counsel and is being filed with the Clerk of the Somerset County Superior Court.

**II.	Jurisdiction and Venue**

10.	Venue is proper in this Court pursuant to 28 U.S.C. §§ 1441(a) and 1446(a) because the Superior Court, County of Somerset, Maine, where the State Court Action was filed and has been pending prior to removal, is a state court within this federal district and division.

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because: (i) complete diversity exists between Plaintiffs and all properly joined and served Defendants; and (ii) the amount in controversy exceeds $75,000.

## GROUNDS FOR REMOVAL

A. <u>Complete Diversity Exists Between Plaintiffs and the Properly Joined Defendants</u>

12. As of the date of this removal notice, Plaintiffs are citizens of Maine, owning and/or occupying property in Fairfield, Maine. Ex. A, ¶¶ 3-10; *see Padilla-Mangual v. Pavia Hosp.*, 516 F.3d 29, 31 (1st Cir. 2008) (establishing that citizenship is determined by reference to a party's domicile, which in turn "is the place where he has his true, fixed home and principal establishment") (quoting *Rodriguez-Diaz v. Sierra-Martinez*, 853 F.2d 1027, 1029 (1st Cir. 1988)).

13. Huhtamaki is a corporation organized under the laws of, and existing in, the Commonwealth of Delaware, with its principal place of business located at 9201 Packaging Drive, De Soto, Kansas 66018. Ex. A, ¶ 12; *see Harrison v. Granite Bay Care, Inc.*, 811 F.3d 36, 40 (1st Cir. 2016) (for purposes of diversity jurisdiction, a corporation is a citizen of every state in which it is incorporated and the state in which it has its principal place of business).[1]

14. International Paper is, and was at the time of the filing of this action, a citizen of the States of New York and Tennessee. *Id.*, ¶ 18.

15. Sappi North America, Inc., is, and was at the time of the filing of this action, a citizen of the States of Pennsylvania and Massachusetts. *Id.*, ¶ 19.

---

[1] Huhtamaki Oyj is a citizen of a foreign state, Finland.

16. S.D. Warren Company is, and was at the time of the filing of this action, a citizen of the States of Pennsylvania and Massachusetts. *Id.*, ¶ 20.[2]

17. Sappi LTD is a foreign company organized under the laws of, and existing in, the country of South Africa, with its principal place of business located in Rosebank, Johannesburg, South Africa. *Id.*, ¶ 22.

18. Kimberly-Clark is, and was at the time of the filing of this action, a citizen of, the States of Delaware and Texas. *Id.*, ¶ 26.

19. UPM-Kymmene, Inc. is a foreign company organized under the laws of and existing in, the country of Finland, with its principal place of business located in Helsinki, Finland. *Id.*, ¶ 29.[3]

20. Northern SC Paper Corporation is, and was at the time of the filing of this action, a citizen of the States of New York and Delaware. *Id.*, ¶ 30.

21. Defendant Perry Videx, LLC is, and was at the time of the filing of this action, a citizen of the State of New Jersey. *Id.*, ¶ 31.

22. Infinity Asset Solutions is a foreign company organized under the laws of, and existing in, the country of Canada, with its principal place of business located in Concord, Ontario. *Id.*, ¶ 32.

23. New Mill Capital, LLC is, and was at the time of the filing of this action, a citizen of the States of New York and Delaware. *Id.*, ¶ 33.

---

[2] S.D. Warren Company is a predecessor in interest to Sappi North America, Inc. and no longer a legal entity separate from Sappi North America, Inc.  Even if it were still in existence, however, S.D. Warren Company is diverse from Plaintiffs for purposes of this Court's jurisdiction.

[3] Contrary to Plaintiffs' allegation, UPM-Kymmene, Inc. is incorporated in New York with a principal place of business in Illinois. UPM-Kymmene Inc. is, and was at the time of the filing of this action, a citizen of those two states.

24. Verso Corporation is, and was at the time of the filing of this action, a citizen of the States of Delaware and Ohio. *Id.*, ¶ 37.

25. Pixelle Specialty Solutions is, and was at the time of the filing of this action, a citizen of the States of Ohio and Pennsylvania. *Id.*, ¶ 38.[4]

26. The improperly joined Defendant Go Lab, Inc. is, and was at the time of the filing of this action, a citizen of the States of Delaware and Maine. *Id.*, ¶ 35.

27. The improperly joined Defendant Pine Tree Waste, Inc. is, and was at the time of the filing of this action, a citizen of the States of Maine and Vermont. *Id.*, ¶ 45.

28. Accordingly, complete diversity exists between Plaintiffs and the properly joined Defendants to remove this action. Moreover, all properly joined and served Defendants consent to this Notice of Removal. *See* Ex. D.

        B.        <u>The Amount in Controversy Exceeds $75,000, Exclusive of Interest and Costs</u>

29. Huhtamaki denies Plaintiffs' allegations of wrongful conduct. For purposes of establishing the amount in controversy, however, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87–89 (2014). This Court need only consider extrinsic evidence in support of Huhtamaki's allegation if Plaintiffs dispute that the amount in controversy meets the jurisdictional threshold. *Id*.

30. In their Complaint, Plaintiffs do not specifically allege that the amount in controversy exceeds $75,000, exclusive of interest and costs. But Plaintiffs allege that,"[a]s a direct and proximate result of Defendants' use, emission, discharge, disposal, distribution and spraying of PFAS throughout Somerset County, and the exposure to PFAS resulting therefrom, Plaintiffs

---

[4] Contrary to Plaintiffs' allegation, Pixelle Specialty Solutions is, and was at the time of the filing of this action, a citizen of the States of Delaware and Pennsylvania.

6

presently suffer, and will continue to suffer, real property damage, out of pocket expense, personal property damage, loss of use and enjoyment of property, diminution in property value, physical and emotional injuries, the necessity for long-term medical monitoring, annoyance, upset, aggravation, and inconvenience." Ex. A, ¶¶ 114, 123; *see also id.* ¶¶ 99, 107, 133, Request for Relief (a) and (b); *see generally id.*, all Counts. Plaintiffs also seek attorneys' fees, costs, and litigation expenses, as well as prejudgment and post judgment interest. *Id.*, Request for Relief (c) and (d).

31. Even though the jurisdictional amount was not alleged in the Complaint, the Court can consider the removal notice and pleadings or other documents concerning the amount in controversy. *Hogan v. Wal-Mart Stores E., L.P.*, No. 13-603S, 2013 U.S. Dist. LEXIS 182702, at *11 (D.R.I. Nov. 27, 2013) ("[I]f the jurisdictional amount is not facially apparent from the complaint, the court may look to the notice of removal and any other materials submitted by the parties . . ."); *Providence Piers, LLC v. SMM New England, Inc.*, No. 12-532-S, 2013 U.S. Dist. LEXIS 6438, at *11 (D.R.I. Jan. 16, 2013) ("Though the First Circuit has not prescribed the removing party's burden of proving the amount in controversy for purposes of diversity jurisdiction where the plaintiff has not alleged an amount of damages in the pleadings, *Milford-Bennington R.R. Co. v. Pan Am Rys., Inc.*, 695 F.3d 175, 178-79 (1st Cir. 2012), this Court agrees with several recent district court decisions which hold that defendants must show a 'reasonable probability' that the amount in controversy exceeds $75,000."); *Doughty v. Hyster New England, Inc.*, 344 F. Supp. 2d 217, 219 (D. Me. 2004) (turning to "other pleadings and supporting documentation to ascertain whether Defendant has met its burden to invoke federal jurisdiction" by satisfying the amount-in-controversy requirement).

32. Although Defendants deny Plaintiffs' allegations and deny that Defendants are liable to Plaintiffs, the allegations in the Complaint that Plaintiffs have developed and suffered personal injuries and emotional distress, along with damages to their real property, supports a finding that the amount in controversy exceeds $75,000, exclusive of interest and costs. There are seventeen Plaintiffs, and the nature of the alleged injuries and the broad scope of damages requested, both economic and non-economic, "weigh[] heavily in favor of a finding that the Complaint demonstrates that the amount in controversy reasonably exceeds $75,000.00." *Gabrielle v. Allegro Resorts Hotels*, 210 F. Supp. 2d 62, 65 (D.R.I. 2002); *see also Hogan*, 2013 U.S. Dist. LEXIS 182702, at *13 ("[T]he amount in controversy is measured by the damages that the plaintiff might recover, assuming that the allegations in the complaint are true."); *Ayers v. Jackson Twp.*, 525 A.2d 287, 315 (1987) (reinstating a jury award of $8,204,500 for medical surveillance for plaintiffs who alleged their well water was contaminated by various pollutants); *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 978 (1993) (noting that the trial court awarded medical monitoring damages in the amount of $142,975 to the four plaintiffs, who alleged their well water was contaminated by various pollutants). "[T]he Court should rely on judicial experience and common sense" that a claim satisfies the amount-in-controversy requirements. *Hogan*, 2013 U.S. Dist. LEXIS 182702, at *14 (citing *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010)).

33. For these reasons, it is clear that Plaintiffs seek damages in excess of $75,000, exclusive of interest and costs.

C. <u>Plaintiffs Have Fraudulently Joined Pine Tree and Go Lab</u>

34. In determining whether the Court has complete diversity, the Court must look to the allegations in the Complaint. Although removal is ordinarily prohibited where a "properly

8

joined" defendant is a "citizen of the State in which such action is brought," *see* 28 U.S.C. § 1441(b), Pine Tree's and Go Lab, Inc.'s presence in the case does not prevent removal because they have been fraudulently joined.

35. "[F]raudulent joinder describes any improper joinder[;] a defendant need not prove that the plaintiff intended to deceive or mislead . . . ." *Lawrence Builders, Inc. v. Kolodner*, 414 F. Supp. 2d 134, 137 (D.R.I. 2006). "The central question or 'linchpin of the fraudulent joinder analysis is whether the joinder of the non-diverse party has a reasonable basis in law and fact.'" *Id.*

36. Where fraudulent joinder is alleged, "[T]he Court's task is not to decide the case, but, rather, it is to determine whether the plaintiff's claims against the non-diverse defendants have such little prospect of success that their joinder was improper. Put another way, the relevant inquiry is whether there is a sufficiently reasonable basis for the claim to preclude a finding that joinder amounts to nothing more than a means to prevent removal." *Arriaga v. New England Gas Co.*, 483 F. Supp. 2d 177, 183-84 (D.R.I. 2007) (citations omitted); *Universal Truck & Equip. Co. v. Southworth-Milton, Inc.*, 765 F.3d 103, 108 (1st Cir. 2014).

37. In reviewing allegations of fraudulent joinder, the Court may "pierce the pleadings" and consider evidence normally reserved for summary judgment, such as affidavits presented by the parties. *Gabrielle v. Allegro Resorts Hotels*, 210 F. Supp. 2d 62, 69 (D.R.I. 2002) (considering affidavit and noting that "fraudulent joinder claims can be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony" (quoting *Hart v. Bayer Corp.*, 199 F.3d 239, 246–47 (5th Cir. 2000))).

38. Here, Pine Tree Waste, Inc. and Go Lab, Inc. have been fraudulently joined, thereby depriving out-of-state Defendants of their right to a federal forum. In determining whether there

has been fraudulent joinder, the Court should consider the legitimacy and legal viability of the claims against Pine Tree Waste, Inc. and Go Lab, Inc., and the factual circumstances pled in support of the claims.

### 1. Pine Tree Waste, Inc.

39. Plaintiffs allege that, "[u]pon information and belief, Pine Tree owned, controlled, and operated a landfill in Fairfield, Somerset County, Maine, formerly owned by Central Maine Disposal Corporation and contracted with other Defendants to retain and dispose of PFAS-containing biosolids from the Mills and elsewhere at said landfill." Ex. A. ¶ 45. Plaintiffs further allege, "Pine Tree is the successor in interest to Central Maine Disposal and has assumed its rights, duties, and liabilities. Pine Tree continued to contract with the other Defendants to retain and dispose, among other substances, PFAS, in essentially the same manner as all previous owners and operators of Central Maine Disposal landfill." *Id*. ¶ 46.

40. These allegations are refuted by the declaration of Brian Oliver, Regional Vice President for Casella Waste Systems, who has oversight of various operations of Pine Tree Waste, Inc. *See generally* Ex. E. Based on his personal knowledge and his review of company records, Mr. Oliver is "aware of no evidence that Pine Tree Waste, Inc. has ever owned or operated the Fairfield landfill or any landfill in Fairfield, Maine, and [he] believe[s] the Company never has owned or operated such a landfill." *Id*. ¶ 3. He further avers that he is "aware of no evidence that Pine Tree Waste, Inc. has acquired any entity that ever owned or operated the Fairfield landfill or any landfill in Fairfield, Maine, and [he] believe[s] the Company has never acquired such an entity." *Id.* ¶ 4.

41. Plaintiffs do not have a reasonable possibility of recovery for their claims against Pine Tree Waste, Inc. because Pine Tree Waste, Inc. has never owned or operated the Fairfield

landfill (or any landfill in Fairfield, ME), nor has Pine Tree Waste, Inc. acquired any entity that has owned or operated the Fairfield landfill (or any landfill in Fairfield, ME). Pine Tree Waste, Inc.'s citizenship must therefore be disregarded for purposes of determining diversity of citizenship.

### 2. Go Lab, Inc.

42. Plaintiffs allege, "[u]pon information and belief, in 2019, Defendants Perry Videx, Infinity, and New Mill sold Madison Paper Industries Mill to Go Lab, Inc." Ex. A, ¶ 34. Plaintiffs further allege: "Defendants Northern Paper and UPM, jointly owned and operated the Madison Paper Industries Mill that manufactures paper, bleached chemical pulp, and biosolids using or containing PFAS, located on Maine Street, Starks, Maine 04911 from 1980 to 2016 when the Madison Paper Industries Mill was sold to Perry Videx, Infinity Asset Solutions, and New Mill Capital. Perry Videx, Infinity Asset Solutions, and New Mill Capital in turn owned and operated the Madison Paper Industries Mill until 2019 when they sold the same to Go Lab. Upon Information and belief, Go Lab is the current owner and operate [sic] of the Madison Paper Industries Mill." *Id*. ¶ 36.

43. Joshua Henry, the President of Go Lab, Inc. has provided a declaration refuting Plaintiffs' allegations. *See generally* Ex. F. Mr. Henry states that the Madison Paper Industries mill closed and ceased all operations in May 2016—years before GoLab purchased the Madison Paper Industries site in 2019—and that Go Lab has never operated the Madison Paper Industries Mill. *Id*. ¶¶ 6, 11. In addition:

- "Go Lab has never manufactured paper, bleached chemical pulp, biosolids, or any product using or containing PFAS, nor has it used PFAS in making treated paper products for food packaging or other applications." *Id*. ¶ 8.

- "Go Lab has never employed processes creating PFAS residues or byproducts, nor has it discharged or otherwise disposed of such residues or byproducts into groundwater or surface water or otherwise." *Id.* ¶ 9.

- "Go Lab has never disposed of PFAS containing biosolids in landfills, sold or distributed PFAS containing biosolids for fuel or fertilizer or sprayed PFAS containing fertilizer." *Id.* ¶ 10.

44. Plaintiffs' allegations against Go Lab could only be based on its status as an alleged corporate successor to Perry Videx, Infinity Asset Solutions, and New Mill Capital.

45. Under Maine law, "[A]bsent a contrary agreement by the parties, or an explicit statutory provision in derogation of the established common law rule, a corporation that purchases the assets of another corporation in a bona fide, arm's-length transaction is not liable for the debts or liabilities of the transferor corporation." *Director of Bureau of Labor Standards v. Diamond Brands, Inc.*, 588 A.2d 734, 736 (Me. 1991).

46. In 2019, Go Lab acquired the Madison Paper Industries Mill pursuant to an Asset Purchase Agreement. Ex. C, ¶ 11. "The Asset Purchase Agreement did not contain an express or implied agreement for Go Lab to assume any of Perry Videx's, Infinity Asset Solutions', or New Mill Capital's alleged liabilities arising from its business operations." *Id.* ¶ 12. As a result, Go Lab cannot be held responsible for any of the past business operations giving rise to Plaintiffs' alleged harm from the Madison Paper Industries Mill.

47. Plaintiffs do not have a reasonable possibility of recovery for their claims against Go Lab because it has never operated the Madison Paper Industries Mill, and it has not assumed any alleged liabilities associated with the Mill from Perry Videx, Infinity Asset Solutions, or New Mill Capital.

48.     For the reasons set forth above, Plaintiffs do not have a reasonable possibility of recovery for their claims against Go Lab and Pine Tree; accordingly, it is reasonable to conclude that they have been fraudulently joined by Plaintiffs in an attempt to avoid federal court.

## **CONCLUSION**

In sum, removal is proper as there is diversity between Plaintiffs and the properly joined Defendants. The addition of Pine Tree and Go Lab does not destroy diversity jurisdiction because both defendants were fraudulently joined. As such, Huhtamaki gives notice that the above-captioned matter is hereby removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

Dated: December 20, 2021

/s/ Melissa A. Hewey
Melissa A. Hewey
Jeana M. McCormick
**DRUMMOND WOODSUM**
84 Marginal Way, Suite 600
Portland, ME 04101
207-772-1941
mhewey@dwmlaw.com
jmccormick@dwmlaw.com

Mark D. Anstoetter *(pro hac vice forthcoming)*
Brent Dwerlkotte *(pro hac vice forthcoming)*
Kathryn Larkins *(pro hac vice forthcoming)*
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Blvd.
Kansas City, Missouri 64108
816-474-6550
manstoetter@shb.com
dbdwerlkotte@shb.com
klarkins@shb.com

*Attorneys for Defendant Huhtamaki, Inc.*